UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

APRIL W.,[1]

                         Plaintiff,                  DECISION AND ORDER

-vs-

                                                  1:24-cv-00044-MAV

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

## INTRODUCTION

Plaintiff April W. ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of the United States Social Security Administration ("Commissioner"), denying Plaintiff's application for Supplemental Security Income ("SSI"). ECF No. 1; 42 U.S.C. § 1383(c)(3). The parties filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure, and Plaintiff filed a reply brief. ECF Nos. 6, 10, 11. For the reasons set forth below, the Court denies Plaintiff's motion [ECF No. 6] and grants the Commissioner's cross-motion [ECF No. 10].

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

---

[1] The Court's Standing Order issued on November 18, 2020, directs that "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-governmental party will be identified and referenced solely by first name and last initial."

1

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Application

On June 24, 2020, Plaintiff protectively filed an application for SSI, alleging a disability onset date of June 24, 2019, due to borderline personality disorder, bipolar disorder, depression, anxiety, and back pain. Administrative Record ("AR") at 17, 214–23,[2] ECF No. 5. In December 2020, the Commissioner denied Plaintiff's application upon initial consideration, finding Plaintiff not disabled. *Id.* at 61–68, 86–93. Thereafter, the Commissioner denied Plaintiff's request for reconsideration. *Id.* at 70–79, 95–103.

## II. Plaintiff's Hearing Before the ALJ

On September 22, 2022, Plaintiff appeared with her attorney for a telephone conference before an Administrative Law Judge ("ALJ"). *Id.* at 39. Plaintiff testified that she was born in 1995 and was a high school graduate. *Id.* at 44. In 2016 or 2017, Plaintiff attempted suicide when she "stepped off" of a roof. *Id.* at 44–45. As a result of the suicide attempt, Plaintiff sustained, and continues to suffer from, extreme lower back pain. *Id.* Plaintiff self-medicated through legal and illegal substances. *Id.* at 48-49. Plaintiff acknowledged a history of substance use but explained that she achieved sobriety six or seven months prior to the hearing. *Id.* at 49.

Plaintiff testified that her depression manifests itself in "find[ing] no happiness in anything," sleeping all day, and not wanting to be alive *Id.* at 50.

---

[2] The page references from the Administrative Record are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

Plaintiff experiences anxiety when socializing and leaving the house. *Id.* at 49-50, 54. Plaintiff's mood frequently switches between "different Aprils . . . one's happy, one's depressed." *Id.* at 51, 54.

### III. The ALJ's Decision

After considering all of the evidence in the record, including testimony from the hearing and medical records demonstrating a history of substance use, the ALJ found that Plaintiff was disabled under the Social Security Act ("Act") pursuant to the five-step sequential analysis[3] when factoring in her substance use, but ultimately determined that Plaintiff's substance use was a "contributing factor material to the determination of disability" and, therefore, Plaintiff was not disabled under the Act. *Id.* at 18; *see* 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(a).[4]

---

[3] The Social Security Administration has established a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

[4] "When there is medical evidence of [a claimant's] drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012); *see* 20 C.F.R. § 416.935(a). When such evidence exits, the ALJ must determine whether the claimant's drug addiction or alcoholism is a "contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a); *see* 42 U.S.C. § 1382c(a)(3)(J) ("[A]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."). The critical factor in this

3

As to the ALJ's initial determination of disability when factoring in Plaintiff's substance use, the ALJ applied the five-step sequential analysis and found at step one, that Plaintiff had not engaged in substantial gainful activity since June 24, 2019, the alleged onset date. AR at 19. At step two, the ALJ found that Plaintiff had the following severe impairments: polysubstance abuse, borderline personality disorder, major depressive disorder, and generalized anxiety disorder.[5] *Id.* at 19-20. At step three, even with the Plaintiff's substance use, the ALJ determined that Plaintiff would not have an impairment or combination of impairments that meet or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20-22.

Before proceeding to access Plaintiff's Residual Functional Capacity, the ALJ evaluated Plaintiff's mental impairments using the "special technique"[6] and found,

---

determination "is whether the [Social Security Administration] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1); *see Cage*, 692 F.3d at 123. The Social Security Administration will apply the five-step sequential evaluation process a second time to determine whether the claimant would be disabled if they were not using drugs or alcohol. *See* Social Security Ruling (SSR) 12-2p, 2013 WL 621536, at *4–5 (Feb. 20, 2013). "Claimants bear the burden of proving [drug addiction or alcoholism] immateriality." *Cage*, 692 F.3d at 123.

[5] The ALJ noted that diagnoses of major depressive disorder, generalized anxiety disorder, and borderline personality disorder are not well-described in the record and appear to be based on historical information provided by Plaintiff rather than any psychiatric evaluation performed outside of the context of substance intoxication or overdose. AR at 19-20.

[6] When a claimant alleges mental impairments in support of their claim of disability, the ALJ must supplement steps two and three of the standard five-step analysis with what is known as the "special technique." *See* 20 C.F.R. § 416.920a; *see Nedzad O. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 37, 44 (2d Cir. 2021). This technique requires the ALJ to determine first whether the claimant has a "medically determinable mental impairment." *Nedzad O.*, 577 F. Supp. 3d at 44.
    If the claimant is found to have such an impairment, the ALJ must rate the degree of functional limitation resulting from the impairment(s) across four broad functional areas, known as "Paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c); 20 C.F.R. Part 404, Subpart B, Appendix 1 §§

4

including the substance use, that Plaintiff had a mild limitation with "understanding, remembering, or applying information;" a moderate limitation with "interacting with others"; a moderate limitation with "concentrating, persisting, or maintaining pace"; and a marked limitation with "adapting or managing oneself." *Id.* at 21.

Before proceeding to step four, the ALJ found that Plaintiff had the Residual Functional Capacity[7] ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b),[8] with certain limitations. *Id.* at 22–23. At step four, the ALJ found that Plaintiff had no past relevant work. *Id.* And at step five, the ALJ found that there were no jobs that existed in significant number in the national economy that Plaintiff could have performed when factoring in Plaintiff's substance use and, therefore, concluded that Plaintiff was disabled. *Id.* at 23–24.

However, the ALJ did not end the disability inquiry with that determination because there was medical evidence in the record of Plaintiff's drug and alcohol use. *Id.* at 24-32; *see* 20 C.F.R. § 416.935(a). Accordingly, the ALJ then evaluated whether Plaintiff would still be disabled if she stopped her substance use. *Id.* at 24–32. At step

---

12.00(E)(1)–(4); *see also Nedzad O.*, 577 F. Supp. 3d at 44.

      Based on the record, the ALJ must make a finding as to the degree of any limitations in each functional area, using assessments of "none," "mild," "moderate," "marked," and "extreme," *see* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c), which in turn informs whether the ALJ deems the mental impairment "severe" or "non-severe," *see id.* §§ 404.1520a(d)(1), 416.920a(d).

[7] "Residual functional capacity" means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 416.945(a)(1).

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

two, the ALJ found that if Plaintiff stopped her substance use, the remaining limitations would cause more than a minimal impact on the Plaintiff's ability to perform basic work activities and, therefore, Plaintiff would have a severe impairment or combination of impairments. *Id.* at 24.[9] At step three, the ALJ found that if Plaintiff stopped her substance use, Plaintiff would not have an impairment or combination of impairments that meet or medically equals the severity of one of the impairments listed in 20 C.F.R Part 404, Subpart P, Appendix 1. *Id.* at 24.

Before assessing Plaintiff's RFC, the ALJ evaluated Plaintiff's mental impairments if she stopped substance use pursuant to the "special technique" and found that Plaintiff had a mild limitation with "understanding, remembering, or applying information" because medical records demonstrated no memory impairment; a moderate limitation with "interacting with others" because medical notes indicated that Plaintiff was cooperative, polite, and friendly when sober; a moderate limitation with "concentrating, persisting, or maintaining pace" because medical records demonstrated no memory impairment and normal thought processes; and a moderate limitation with "adapting or managing oneself." *Id.* at 25–26.

Before proceeding to step four, the ALJ found that if Plaintiff stopped her substance use, Plaintiff had the RFC to perform light work as defined in 20 C.F.R § 416.967(b), except:

> [She] can do simple routine repetitive tasks involving occasional contact with supervisors, the general public, and coworkers, can occasionally

---

[9] The ALJ found that while some evidence suggests that the most accurate diagnosis is solely polysubstance abuse, there is some evidence to suggest mental impairments would remain following early abstinence. AR at 20.

>climb stairs and ramps, stoop, kneel, balance, crouch, and crawl; can never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to hazards such as dangerous moving machinery, uneven terrain, and unprotected heights; contact with the public must be superficial in nature incidental to the work being performed (example, no public-facing work).

*Id.* at 26. Notably, the ALJ did not rely on any medical opinions in arriving at their RFC determination.[10] At step four, the ALJ again found that Plaintiff had no past relevant work. *Id.* at 31–32. At step five, however, the ALJ determined that if Plaintiff stopped her substance use and in light of her age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 32. Accordingly, because Plaintiff would not be disabled if she stopped her substance use, the ALJ concluded that Plaintiff's substance use was a contributing factor material to the determination of disability and, thus, found that Plaintiff was not disabled under the Act. *Id.* at 32.

On November 14, 2023, the Appeals Council denied Plaintiff's request to review the ALJ's decision. *Id.* at 1. Therefore, the ALJ's decision became the final decision of the Commissioner. This appeal followed.

## LEGAL STANDARD

Congress has authorized federal courts to engage in limited review of final Social Security benefits decisions. *See* 42 U.S.C. § 405(g). The Court's scope of review

---

[10] The ALJ rejected as not persuasive the opinion of the state agency psychology consultants that Plaintiff's impairments were not severe. AR at 23, 31. According to the ALJ, the opinions were not consistent with the longitudinal record and hospital visits and were determined by analysis of a very limited record at the time they were made. *Id.*

7

is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See id.*; *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022).

"'Failure to apply the correct legal standard constitutes reversible error, including in certain circumstances, failure to adhere to the applicable regulations.'" *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for non-compliance with regulations)). Federal courts review *de novo* whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then it must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (noting it is not a federal court's function to determine *de novo* whether a plaintiff is disabled). "The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Id.* (quotations and emphasis omitted); *see Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (reiterating "substantial evidence" is "more than a mere scintilla" and not a high evidentiary burden to satisfy). In other words, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Schillo*, 31 F.4th at 74 (quotation omitted). The Court

8

"require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [it] to decide whether the determination is supported by substantial evidence." *Id.* (quotation omitted).

## DISCUSSION

Plaintiff contends that the ALJ erred in its RFC determination by relying on its own lay interpretation of raw medical evidence instead of on medical opinions. ECF No. 6–1 at 8–10. Plaintiff also argues that the ALJ erred by failing to provide a logical bridge between the evidence and Plaintiff's RFC. *Id.* at 10–11. Lastly, Plaintiff asserts that the ALJ erred in its RFC determination by failing to develop the record. *Id.* at 6–1 at 11–12. In response, Commissioner contends that there is no requirement that the ALJ's RFC finding be based on a medical opinion, substantial evidence supports the ALJ's RFC determination, and the ALJ properly developed the record. ECF No. 10–1 at 6–20. For the reasons set forth below, the Court rejects Plaintiff's contentions.

A claimant's RFC is defined as "the most [a claimant] can still do despite [their] limitations" and is assessed by the ALJ "based on all of the relevant evidence" in the record. 20 C.F.R. § 416.945(a)(1); *see also* 20 C.F.R. 416.945(a)(3) (providing that a claimant's RFC is assessed based on "all of the relevant medical *and other evidence*") (emphasis added)). "An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021). Where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source

statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (quotations, citations, and brackets omitted); *see Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity.") (quotations and citation omitted)); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013).

Contrary to Plaintiff's contentions, "there is no requirement that an ALJ's RFC finding be based on a medical opinion." *Nicholas F. v. Comm'r of Soc. Sec.*, No. 1:21-cv-261-DB, 2023 WL 3901692, at *8 (W.D.N.Y. June 8, 2023) (collecting cases). "Indeed, an ALJ may formulate an RFC absent any medical opinions" and "is free to reject portions of medical-opinion evidence not supported by objective evidence." *Demeca P. v. Comm'r of Soc. Sec.*, No. 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024). Plaintiff relies on cases such as *Angela S. v. Comm'r of Soc. Sec.*, No. 21-CV-06678-MJR, 2024 WL 1298168 (W.D.N.Y. Mar. 27, 2024), where the Court remanded for further administrative proceeding on the RFC determination because "'[o]nce the ALJ rejected the[ ] medical opinions, *he was still required to rely upon something more than his own lay opinion to determine [p]laintiff's RFC.*'" *Angela S.*, 2024 WL 1298168, at *4 (emphasis added) (quoting *Bruce P. v. Comm'r of Soc. Sec.*, No. 21-CV-241; 2022 WL 17985819, at *4 (W.D.N.Y. Dec. 29, 2022)).

Here, in contrast, the ALJ relied upon medical records detailing Plaintiff's

treatment history and contemporaneous treatment notes to reasonably conclude that Plaintiff could perform light work with certain limitations, as discussed above, if Plaintiff stopped using drugs and alcohol. *See Cook*, 818 F. App'x at 109–10; *Monroe*, 676 F. App'x at 8; *see also Ervin-Atkinson v. Comm'r of Soc. Sec.*, No. 18-CV-1056-FPG, 2020 WL 830434, at *3 (W.D.N.Y. Feb. 20, 2020) ("The ALJ properly focused on the record evidence from Plaintiff's periods of abstinence from [drug] use in determining Plaintiff's RFC.)". Plaintiff's medical records document an extensive history of opiate overdoses and excessive alcohol use from May 2019 through at least July 2021. *See* AR at 303–59, 393–99, 425–27. Nearly all of Plaintiff's medical records are from hospital visits due to opiate overdoses. *Id.* Plaintiff's alleged psychiatric symptoms and complaints are largely documented only in connection with her extensive history of drug and alcohol use. *Id.* Indeed, as the ALJ noted, Plaintiff's alleged psychiatric conditions are not well described in the record and appear to be based on historical information provided by Plaintiff rather than psychiatric evaluations performed outside of the context of substance intoxication or overdose. *Id.* at 20.

Additionally, Plaintiff did not show any signs or symptoms of major mental illness when sober during a multi-day hospital stay for a drug overdose. *Id.* at 312. Notably, the ALJ recognized that there is no evidence showing that Plaintiff sought treatment for psychiatric symptoms in the six-to-seven-month period prior to the September 2022 hearing during which Plaintiff testified that she had not been using

illegal substances.[11] *See id.* at 25, 301–434. The medical records further demonstrate that during periods of sobriety, Plaintiff was calm, cooperative, polite, respectful, and sociable with peers. *Id.* at 312, 351–353, 357. Plaintiff's intellectual functioning was intact; her speech was normal, coherent, and fluent. *Id.* at 304, 308, 335, 345–348, 349–359. Plaintiff exhibited a steady gait and normal motor functioning. *Id.*

Despite these findings, the ALJ determined that modified light exertion was appropriate due to medical record evidence showing reduced strength in Plaintiff's upper and lower extremities. *See id.* at 20, 31, 389–392. Additionally, the ALJ found, "out of an abundance of caution," that Plaintiff was limited to light work with postural and hazards limitations due to historical reports of injuries and drowsiness. *See, e.g., id.* at 44, 48, 50. The ALJ determined that Plaintiff's RFC should also include occasional social contact due to medical evidence showing that Plaintiff experienced mood symptoms presenting as irritable or low in conversation outside of intoxication. *Id.* at 31, 312, 391.

Accordingly, based on the foregoing, substantial evidence supports the ALJ's finding that if Plaintiff stopped using drugs and alcohol, Plaintiff retained the RFC to perform a reduced range of simple and routine light work with occasional social contact. *See Monroe,* 676 F. App'x at 8–9 ("Because the ALJ reached her RFC determination based on Dr. Wolkoff's contemporaneous treatment notes . . . that

---

[11] Plaintiff's counsel requested medical records from Dent Neurologic Institute for the period between June 1, 2022 and September 21, 2022. AR at 431. Dent Neurologic Institute responded that Plaintiff has not established care with Dent. *Id.* at 434. The ALJ held the record open for additional, post-hearing evidence. AR at 59. However, the record contains no other evidence from this period demonstrating that Plaintiff received treatment for psychiatric conditions.

determination was adequately supported by more than a mere scintilla of evidence"); *Cook*, 818 F. App'x at 109-110 (finding sufficient evidence for the ALJ to assess the claimant's RFC where treatment notes were in line with the RFC determination); *Nicholas F.*, 2023 WL 3901692, at *3 (finding that based on the evidence in the record, including Plaintiff's longitudinal treatment history, Plaintiff would have the capacity to perform unskilled, low stress jobs if he stopped his substance use).

Additionally, the ALJ's RFC explanation was "sufficiently specific to satisfy [their] obligation to construct an accurate and logical bridge between [their] recitation of the facts and the conclusions . . . reached." *Terrence S. B. v. Comm'r of Soc. Sec.*, No. 1:22-cv-0380 (JJM), 2024 WL 4131237, at *5 (W.D.N.Y. Sept. 10, 2024) (quotations and citations omitted). As discussed above, the ALJ explained that Plaintiff could perform a reduced range of light work with limited social interaction based on evidence in the record demonstrating that during periods of sobriety, Plaintiff had normal intellectual functioning, speech, and motor skills, but that Plaintiff also had reduced strength in her upper and lower extremities and experienced mood symptoms presenting as irritable or low in conversation. AR at 20, 26–31, 304, 308, 312, 335, 345–353, 357, 389–392. The ALJ incorporated sufficient analysis, and the Court could discern how the ALJ formulated Plaintiff's RFC based on their written decision. *See Demeca P.*, 2024 WL 4505265, at *5.

Lastly, the Court rejects Plaintiff's claim that the ALJ committed reversible error in its RFC determination by failing to develop the record. An ALJ "is not required to develop the record any further when the evidence already presented is

'adequate for [the ALJ] to make a determination as to disability.'" *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Furthermore, "the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner." *Linda P. v. Comm'r of Soc. Sec.*, No. 1:21-cv-625-DB; 2024 WL 1257410, at *6 (W.D.N.Y. Mar. 25, 2024); *see Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *Smith*, 740 F. App'x at 726 ("Smith had a duty to provide a more restrictive RFC, and failed to do so."); 20 C.F.R. § 416.912(a). As discussed above, the evidence was adequate for the ALJ to make an RFC determination; thus, the ALJ had no obligation to develop the record any further. *See Janes*, 710 F. App'x at 34; *Monroe*, 676 F. App'x at 8. To the extent the record should have been developed further with respect to Plaintiff's RFC, Plaintiff, through counsel, had the responsibility to supplement the record. *See Linda P.*, 2024 WL 1257410, at *10.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings [ECF No. 6] is denied, and the Commissioner's cross-motion for judgment on the pleadings [ECF No. 10] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

Dated: November 14, 2024
      Rochester, New York

*/s/ Meredith Vacca*
HON. MEREDITH A. VACCA
United States District Judge